M. Darin Hammond (6741)
**SMITH KNOWLES, P.C.**
2225 Washington Blvd., Suite 200
Ogden, UT 84401
Telephone:     (801) 476-0303
Facsimile:     (801) 476-0399
dhammond@smithknowles.com

Dana T. Farmer (8371)
**DANA T. FARMER, LLC**
4287 Harrison Blvd., #312
Ogden, UT 84403
Tel: (801) 388-8908
danatfarmer@icloud.com

           *Attorneys for Plaintiffs*

---

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### NORTHERN DIVISION

| | |
|---|---|
| WHITNEY CROFT, an individual; DAVID PIKE, an individual; ROBERT BOHMAN, an individual; BRANDON PETERSON, an individual; SHELLEY PAIGE, an individual, <br><br> Plaintiffs, <br> vs. <br><br> MORGAN COUNTY and WASATCH PEAKS RANCH, LLC, a Delaware limited liability company, <br><br> Defendants. | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983** <br><br><br> Case No. 1:23-cv-00114-DAO <br> Magistrate Judge Daphne A. Oberg |

Plaintiffs, WHITNEY CROFT, ROBERT BOHMAN, BRANDON PETERSON,

SHELLEY PAIGE, and DAVID PIKE by and through counsel, hereby submit the following First

Amended Complaint against Defendants, Morgan County and Wasatch Peaks Ranch, LLC, for

damages arising from denial of civil rights granted to Plaintiffs under the 14th Amendment to the United States' Constitution.

## PARTIES

1.       Plaintiff, Whitney Croft is a resident of Morgan County, State of Utah and owns certain real property in the County located at 4150 W. Peterson Creek Road, Morgan, Utah 84050. Ms. Croft is a sponsor of a referendum for an ordinance passed by the Morgan County Council on October 30, 2019.

2.       Plaintiff, David Pike is a resident of Morgan County, State of Utah and owns certain real property in the County located at 310 N. Morgan Valley Drive, Morgan, Utah 84050. Mr. Pike is a sponsor of a referendum for an ordinance passed by the Morgan County Council on October 30, 2019.

3.       Plaintiff, Robert Bohman is a resident of Morgan County, State of Utah and owns certain real property in the County located at 2332 Old Highway Road, Morgan, Utah 84050. Mr. Bohman is a sponsor of a referendum for an ordinance passed by the Morgan County Council on October 30, 2019.

4.       Plaintiff, Brandon Peterson is a resident of Morgan County, State of Utah and owns certain real property in the County located at 1024 West Old Highway Road, Morgan, Utah 84050. Mr. Peterson is a sponsor of a referendum for an ordinance passed by the Morgan County Council on October 30, 2019.

5.       Plaintiff, Shelley Paige is a resident of Morgan County, State of Utah and owns certain real property in the County located at 313 W. 1550 S., Morgan, Utah 84050. Ms. Croft is

a sponsor of a referendum for an ordinance passed by the Morgan County Council on October 30, 2019.

6.    Defendant, Morgan County is a political subdivision of the State of Utah.

7.    Defendant, Wasatch Peaks Ranch, LLC is a Delaware limited liability company and the owner of approximately 11,000 acres in Morgan County that are at issue in this matter.

## JURISDICTION AND VENUE

8.    Because the issues presented in this case "arise under federal law", jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

9.    Plaintiffs are not pursuing any state-based claims in this action.

10.    Venue is proper in this Court because "a substantial part of the events giving rise to the claim occurred" in this District and "a substantial part of property that is the subject of the action is situated" in this District. 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

11.    In addition to the facts stated herein, Plaintiffs incorporate all of the Findings of Fact from the Court's Memorandum Decision and Order entered on September 15, 2023 in the matter of *Whitney Croft, et. al. v. Morgan County, et. al., Utah State Second District Court, Morgan County, Case No. 190500095.* (Exhibit "A").

12.    On October 30, 2019, the Morgan County Council adopted Ordinance No. CO19-10 ("Ordinance") authorizing a zoning and general plan change to accommodate a Resort Special District development ("Development") for Wasatch Peaks Ranch, LLC ("WPR").

13.     Due to concerns with the Development, Plaintiffs submitted a Referendum Application ("Application") on November 6, 2019.

14.     The Application was denied by Morgan County which resulted in a lengthy appellate process styled as *Whitney Croft, et. al, v. Morgan County, et. al., Utah State Second District Court, Morgan County, Civil No. 190500095*. ("Referendum Litigation").

15.     On September 15, 2023, the Court entered its Memorandum Decision & Order in the Referendum Litigation ("Ruling"). Exhibit "A".

16.     After Morgan County denied the Application, it allowed WPR to submit land use applications and permit requests which include at least the following:

| 19.010 | WPR Resort Special District |
|--------|------------------------------|
| 20.034 | Wasatch Peaks Ranch Temporary Use Permit |
| 20.054 | Wasatch Peaks Substation Pad |
| 20.061 | WPR Open Space Management Plan |
| 20.065 | WPR Concept Plan |
| 21.042 | WPR Phase 1 Preliminary Plat |
| 21.047 | Wasatch Peaks Ranch Temporary Use Permit |
| 21.052 | WPR Temp Use for Temporary Lodge |
| 21.057 | WPR Phase 1 Final Plat |
| 22.013 | WPR Phase 2 Preliminary Plat |
| 22.043 | WPR Temp Use Permit |
| 22.055 | WPR Phase 1 Plat Amendment |
| 22.057 | WPR Phase 2A Final Plat |
| 22.068 | WPR Phase 3A Preliminary Plat |
| 22.071 | WPR Village Amenities |
| 23.021 | WPR Concept Plan 2 |
| 23.024 | WPR Townhomes Small Subdivision |
| 23.025 | WPR Condos Small Subdivision |

| 23.026 | WPR Mountain Villas Small Subdivision |
| 23.029 | WPR North Village residential Site Plan |
| 23.036 | WPR Phase 3A Final Plat |
| 23.039 | WPR Phase 5A Preliminary Plat |

17.    In addition to accepting land use applications and permits requests, Morgan County approved some or all of WPR's applications and requests.

18.    Approved subdivision applications include Phase 1, Phase 2, Phase 2A and Phase 3A.

19.    On Tuesday, October 3, 2023, 18 days after the Ruling, the Morgan County Commission approved WPR's final subdivision plat for Phase 3A.

## <u>FIRST CAUSE OF ACTION</u>
(Violation of Civil Rights, 42 USC § 1983 – Denial
of Equal Protection)

20.    Plaintiffs reincorporate all prior paragraphs as though expressly restated herein.

21.    Article VI, §2(b)(ii) of the Utah Constitution permits,

[t]he legal voters of any county…[to] require any…ordinance passed by the law making body of the county…to be submitted to the voters…before the…ordinance may take effect.

22.    Because a referendum is pending, the Ordinance is not now, and has never been effective.

23.    Notwithstanding the ineffectiveness of the Ordinance, WPR has submitted and Morgan County approved applications for at least the following subdivisions ("Subdivisions"):

a.    Phase 1

       b.     Phase 2
       c.     Phase 2A
       d.     Phase 3A

24.     Each of the Subdivisions' plats rely for their effectiveness of the density, uses, and/or other zoning authorizations in the Ordinance.

25.     Each of the Subdivisions fail to comply with the zoning in effect for WPR's property before the County approved the Ordinance, which zoning still applies to WPR's property pending the termination or passage of the Referendum.

26.     Under Utah Code Ann. § 17-27A-603(2) before WPR can subdivide any portion of its property, it "shall provide to [Morgan] [C]ounty [with] an accurate plat".

27.     Further, "If a subdivision requires a plat, an owner of any land located in a subdivision who transfers or sells any land in that subdivision before a plat of the subdivision has been approved and recorded violates this part for each lot or parcel transferred or sold." Utah Code Ann. § 17-27A-611(1)(a).

28.     When WPR submitted its unlawful applications for the Subdivisions, Morgan County Code § 8-12-8(A) provided that "It shall be unlawful for any person to subdivide any tract or parcel of land which is located within Morgan County except in compliance with this title."

29.     As amended, this section now states "It shall be unlawful for any person to subdivide any tract or parcel of land which is located within the county except in compliance with this chapter. No plat of any subdivision shall be recorded until it has been submitted and approved as herein. A plat shall not be approved if the County Commission determines such plat

to be inconsistent with master traffic and transportation plan, land use ordinance, this code or any other state law or county ordinance." Morgan County Code § 155.392(A).

30.     Because the number and clustering of lots, and availability amenities in a subdivision is controlled by the zoning ordinance for the land to be subdivided, a subdivision plat must comply with the applicable zoning ordinance to be submitted and approved.

31.     The Subdivisions did not comply with the applicable zone when the applications were submitted or when final plat approval was granted.

32.     Under the Utah Code Ann. § 17-27A-803(2) and Morgan County Code, it is a Class C misdemeanor to illegally subdivide property.

33.     Because they fail to comply with the controlling zoning ordinance, each of the Subdivisions is illegal and ineffective.

34.     By accepting subdivision applications, approving them, and allowing the subdivision plats to be recorded, Morgan County and WPR are violating the command in Utah Const. Art. VI prohibiting the effectiveness of an ordinance while a referendum is pending.

35.     To justify violating this constitutional mandate, Morgan County and WPR have created a discriminatory classification system where the Constitution applies as written to select referenda but not others.

36.     In this prejudicial system, if Morgan County grants a referendum application the ordinance in question does not go into effect.

37.     Conversely, if Morgan County denies an application, as it did here, the contested law becomes effective and the landowner – WPR – is permitted to proceed with development while the referendum is contested.

38.     This scheme is not established by the Utah Constitution or the Utah Code.

39.     Rather it is an unsupportable interpretative construct conjured to facilitate legal expediency serving WPR and Morgan County's economic interests, rather than a compelling state interest.

40.     The system unlawfully discriminates against the Plaintiffs because they are sponsors deprived of their right to contest the Ordinance without it going into effect.

41.     To compound this systemic prejudice and discrimination, even though the Court concluded the application is referable to voters, Morgan County is allowing WPR to enjoy the benefit of an effective zone change while they appeal.

42.     In Utah, the legislative authority is shared by the people and elected legislative bodies. Utah Const., Art VI.

43.     By treating the ordinance as effective while the Plaintiffs are conducting a referendum, Morgan County is unlawfully discriminating against Plaintiffs and all Morgan County citizens interest is participating in a fair and balanced referendum by placing its limited, delegated legislative power and WPR's economic interests above Plaintiffs' superior, reserved legislative power, thereby denying the right to conduct a referendum "before the law or ordinance goes into effect." Utah Const., Art VI § 1(2).

44.    The County's and WPR's discriminatory system violates the Fourteenth Amendment's Equal Protection Clause – "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." *See* U.S. Const. amend. XIV, § 1.

45.    Morgan County's violation of Equal Protection has been done in concerted action with WPR and with WPR's knowledge, cooperation, and consent.

46.    For example, during the public comment period for the County Commission meeting on October 3, 2023, the Morgan County Attorney recommended the Commission approve the final Plat 3A because WPR had grandfathered rights.

47.    Based upon this recommendation, the Commission unanimously voted to grant final approval for Subdivision Plat 3A.

48.    Morgan County and WPR are also coordinating their appeal of the Court's Ruling.

49.    In meetings with the County Attorney, Morgan County expressed that it was relying on WPR's notice of appeal filed September 15, 2023 to justify not preparing the referendum signatures petitions that were due on September 20. Utah Code Ann. § 20A-7-602.8 (2019). ("If, on challenge or appeal, the court determines that the proposed referendum is legally referable to voters, the local clerk shall comply with Subsection 20A-7-604(2) within five days after the day on which the determination, and any challenge or appeal of the determination, is final.").

50.     Similarly, WPR filed a Motion to Stay Enforcement of the Memorandum Decision & Order pending the appeals.

51.     The Motion to Stay has the salutary effect of suspending the Clerk's obligation to deliver referendum signature petitions to the Plaintiffs, but WPR actual motivation is to using the Stay as a pretense for establishing that the referendum is not pending and WPR can develop with full unconstitutional support of the County Commission.

52.     Because Morgan County and WPR are acting concert and cooperating to derive unconstitutional benefits that deprive Plaintiffs of Equal Protection, Plaintiffs are compelled to seek damages against Morgan County and WPR.

WHEREFORE, Plaintiff's seek relief and judgment from this Court as follows:

A.     Damages in an amount to be proven at trial;

B.     For all costs and attorney's fees under 42 U.S.C. § 1988; and

C.     For such further and additional relief as is just and proper.

DATED this 16th day of November, 2023.

**SMITH KNOWLES, P.C.**

/s/ M. Darin Hammond
M. Darin Hammond
*Attorneys for Plaintiffs*

DATED this <u>16</u><sup>th</sup> day of November, 2023.

**DANA T. FARMER, LLC**

<u>/s/ Dana T. Farmer</u>
Dana T. Farmer
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of November, 2023, I served a true and correct copy

of the foregoing, **FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION**

**OF CIVIL RIGHTS, 42 U.S.C. § 1983** via First Class United States mail, or ECF transmission

as follows:

- **Mark R. Gaylord**
  gaylord@ballardspahr.com,whelchell@ballardspahr.com,brownlj@ballardspahr.com,saltlakedocketclerk@ballardspahr.com,LitDocket_West@ballardspahr.com

- **M. Darin Hammond**
  dhammond@smithknowles.com,astevenson@smithknowles.com

- **William Lasker**
  laskerw@ballardspahr.com,whelchell@ballardspahr.com,saltlakedocketclerk@ballardspahr.com,LitDocket_West@ballardspahr.com

- **Tesia N. Stanley**
  stanleyt@ballardspahr.com

/s/ Angie Stevenson
Legal Assistant

# Exhibit "A"

IN THE SECOND JUDICIAL DISTRICT COURT OF MORGAN COUNTY
STATE OF UTAH

| | |
|---|---|
| WHITNEY CROFT, ROBERT BOHMAN, BRANDON PETERSON, SHELLEY PAIGE, and DAVID PIKE, <br><br> Petitioners, <br><br> v. <br><br> MORGAN COUNTY and STACY NETZ CLARK, solely in her official capacity as Morgan County Clerk <br><br> Respondents. | **Memorandum Decision and Order** <br><br> Case No. 190500095 <br> Judge Noel S. Hyde |
| WASATCH PEAKS RANCH, LLC, <br><br> Intervenor. | |

The issue presently before the court is the referability of a referendum petition contesting a Morgan County Council decision (the "Law") on the Wasatch Peaks Ranch Resort Special District application on October 30, 2019, which approved the rezoning of a piece of land. The petitioners in this matter are the five sponsors ("Sponsors") of the referendum petition application ("Application"). The respondents are Morgan County and the Morgan County Clerk (together "Morgan County"). Wasatch Peaks Ranch, LLC, ("Wasatch Peaks" or "WPR"), the proponent of the Law, is an intervenor in this action. Having fully considered the record in this case, including the evidence presented at trial and the arguments of the parties, the court issues its Memorandum Decision and Order as follows:

## PROCEDURAL HISTORY

Petitioners originally brought this matter before the court on November 27, 2019, as an appeal from Morgan County's rejection of the Sponsors' Application. This court dismissed the appeal for lack of jurisdiction on March 11, 2020, by oral ruling, and issued a written order of dismissal on April 06, 2020. Petitioners then appealed directly to the Utah Supreme Court. On August 12, 2021, the Utah Supreme Court reversed the dismissal decision and remanded the matter to this court with guidance. A bench trial was held from April 19 through April 21, 2023, at which the court heard testimony and arguments on the matter. Supplemental briefing and argument was requested by the court, and completed and submitted for the court's consideration on July 17, 2023.

## STANDARD OF REVIEW

In its remand decision the Utah Supreme Court indicated that this court "is not tasked with reviewing an established record for mistakes of law—the 'challenge' is essentially de novo." *Croft v. Morgan City.*, 2021 UT 46, ¶ 25. This review, therefore, does not require any deference to the County's legal conclusions. See *Mouty v. Sandy City Recorder*, 2005 UT 41, ¶ 11, 122 P.3d 521 (citing *Tobias v. S. Jordan City Recorder*, 972 P.2d 373, 373-75 (Utah 1998) ("conducting a correctness review and granting no deference to a city recorder's determination that an application for a referendum petition was not timely filed")). Thus, the court's review is not limited to Morgan County's stated bases for rejecting the Application. Instead, the court must examine the statutory requirements delineated in Utah Code §§ 20A-7-602 and 602.8, and consider *de novo* whether the requested referendum is referable.

2

## ISSUES TO BE DETERMINED

The court must decide whether to refer to the Morgan County voters the Law approved by the Morgan County Council ("County Council") at the request of WPR. This determination must be made in accordance with the procedures and time requirements set forth in Utah Code Ann. § 20A-7-602.8, and the Application's structural requirements, which are set forth in Utah Code Ann. § 20A-7-602(2), as follows:

The application shall contain:

> (a) the name and residence address of at least five sponsors of the referendum petition;
> (b) a certification indicating that each of the sponsors is a resident of Utah;
> (c) a statement indicating that each of the sponsors has voted in an election in Utah in the last three years;
> (d) the signature of each of the sponsors, acknowledged by a notary public; and
> (e)(i) if the referendum challenges an ordinance or resolution, one copy of the law; or
>> (ii) if the referendum challenges a local law that is not an ordinance or resolution, a written description of the local law, including the result of the vote on the local law.

Utah Code Ann. § 20A-7-602(2) (2019). Respondents and Intervenor have argued that the application was not timely, and also that it did not meet the other requirements referenced in § 20A-7-602.8(2)(d).

## FACTUAL FINDINGS

1. WPR is the owner of a large piece of land in Morgan County, consisting of about 12,000 acres, upon which they seek to develop a private residential community with skiing, golf, and other amenities.

2. In the pursuit of this development, WPR submitted a Resort Special District Application to Morgan County.

3

3. Wasatch Peaks submitted a County Council Agenda Request form for the October 30, 2019, County Council Meeting ("the Council Meeting") which stated the following as the purpose for the agenda request:

> Discussion/Decision - Council discussion and decision on the Wasatch Peaks Ranch Resort Special District application. The Resort Special District request is to amend the Morgan County General Plan from Natural Resources and Recreation to Master Planned Community and amend the Morgan County Zoning Map, changing the zoning from Forestry (F-1) and Multiple-Use 160 (MU-160) to Resort Special District with a Development Agreement.

4. Morgan County set the Wasatch Peaks Ranch Resort Special District application on the agenda for the Council Meeting, which was to be held on October 30, 2019, at 5:30 p.m.

5. Morgan County circulated notice of the Council Meeting (the "Notice") indicating WPR's desired agenda item.

6. The Notice did not identify or include any proposed ordinance or resolution.

7. A draft of a proposed development agreement was made publicly available before the Council Meeting.

8. No draft of any ordinance or resolution pertaining to the WPR Special District application was in existence in advance of the Council Meeting, and none were discussed, described, or voted on at the Council Meeting.

9.  On October 30, 2019, the County Council met and discussed the Wasatch Peaks Ranch Resort Special District application.

10. During the Council Meeting, the WPR application was voted on by the County Council and approved.

11. At the time of the discussion and approval of the WPR application, both the County Council and WPR indicated that amendments would need to be made to the then-existing-and-unsigned draft of WPR's proposed development agreement which had been discussed at the Council Meeting.

12. The minutes of the Council Meeting did not include or make reference to any ordinance or resolution.

13. At some point after the Council Meeting, the County's planning and zoning office began preparing an ordinance based on the County Council's decision.

14. In response to the County Council's approval of WPR's application, the Sponsors submitted the Application to the Morgan County Clerk's Office on November 6, 2019.

15. The Application included a description of the Law considered by the County Council at the Council Meeting and also the result of the vote on the Law.

16. The Application included a statement that each of the Sponsors, by signing, declared he or she "personally signed this petition", was "registered to vote in Utah," had "voted in the last County election," and

5

that the address listed was his or her correct "residence and post office address."

17. Attached to the Application was a copy of the meeting notice for the Council Meeting, and signature pages containing five sponsor signatures, as well as the name, address, and a notarized acknowledgment for each of the signers.

18. The address of each of the Sponsors is located in Morgan County.

19. The notarization for Whitney Croft's ("Ms. Croft") signature was completed by Kaylee M. Cain, who is a registered notary public.

20. The signatures of the four other Sponsors (Robert Bohman, Brandon Peterson, Shelley Paige, and David Pike) were each separately acknowledged by Ms. Croft, who is also a registered notary public.

21. The completed and fully executed Application was submitted to a deputy clerk of Morgan County in the office of the Morgan County Clerk at approximately 5:00 p.m. on November 6, 2019.

22. The precise minute of filing of the Application could not be determined from the record for the following reasons:

   a. The Morgan County Clerk's office did not use a time-stamp machine and did not have a regular practice of placing any time stamp on documents received in the office.

   b. At least two clocks were present in the clerk's office, but the time indicated on the clocks varied by several minutes.

c. Various witnesses, including deputy clerks, Sponsors, and representatives of WPR, testified about recollections of the time of various events occurring at or about the time of submission of the Application. The testimony of the witnesses was inconsistent and contradictory.

d. No witness provided testimony establishing the specific time of any particular event based upon any clock that had been precisely calibrated to indicate the correct time.

e. Neither the deputy clerks nor the Sponsors perceived any urgency for the determination of precise times. The deputy clerks were not specifically aware that any time-sensitive activity was occurring, and the Sponsors perceived no urgency based on the general belief (mistaken) that the Application needed to be submitted by the "close of business" on November 6th.

f. At least two representatives of WPR were present in the area of the Morgan County Clerk's office at approximately 5:00 p.m. on Nov. 6th.

g. Testimony of the WPR representatives that their presence was merely coincidental or related to other matters is not credible. The court finds that the specific purpose of their presence was to establish or confirm that the Application was not timely filed.

h. The WPR representatives, without reference to any precisely calibrated clock, requested that the deputy clerks make

7

representations, both orally and by written notation on the
Application, that the Application was submitted after 5:00 p.m. Such
requests were specifically calculated to support a later claim that
the Application was not timely filed. The persuasiveness of the
evidence generated by of such requests is substantially
undermined by what the court finds to be a specific determination of
the WPR representatives to create evidence of untimeliness. The
court finds that the representations and notations made by the
deputy clerk in response to the requests of the WPR
representatives are not determinative of the precise time of filing of
the Application.

23. Morgan County Ordinance No. CO-19-10 (the "Ordinance"), which was
created based on the County Council's passage of the Law during the
October 30, 2019, Council Meeting, was recorded and first became
publicly available on November 07, 2019, at 11:09 a.m.

24. The completed development agreement contemplated by the Ordinance
was delivered to the Morgan County Recorder by WPR no earlier than the
evening of November 6, 2019, and was recorded and first became publicly
available on November 07, 2019, at 5:26 p.m.

25. On November 8, 2019, counsel for WPR sent a letter to the Morgan
County Clerk with the intent of influencing the clerk to reject the
Application, in furtherance of the pecuniary interest of WPR.

26. On November 19, 2019, WPR took the further step of filing a lawsuit against the Morgan County Clerk, with the intent to intimidate the clerk to reject the Application.  This was in furtherance of the pecuniary interest of WPR.

27. On November 21, 2019, the Morgan County Clerk rejected the Application for the following stated reasons:

    a.  The Application did not comply with Utah Code Ann. 20A-7-602(2) because it did not include "a certification indicating that each of the sponsors is a resident of Utah."

    b.  The Application did not comply with Utah Code Ann. 20A-7-602(2) because it did not include a copy or sufficient written description of the ordinance, resolution, or law that was the subject of the Zoning Petition Application.

28. On November 27, 2019, Petitioners challenged Morgan County's decision in the present action.

The court may make additional incidental factual findings based on testimony and evidence from trial as part of the legal analysis which follows.

## LEGAL ANALYSIS

[Unless otherwise specifically indicated, all references to provisions of Utah Code are to those provisions that were in force in November 2019.]

9

### A. The Decision of the Morgan County Council Which is at Issue in this Case is a Land Use Law that is Legislative in Nature.

A land use law which may be referred to the voters for a public vote is defined by the referendum statute as:

> [A] law of general applicability, enacted based on the weighing of broad, competing policy considerations, that relates to the use of land, including land use regulation, a general plan, a land use development code, an annexation ordinance, or a comprehensive zoning ordinance or resolution.

Utah Code 20A-7-101(9)(a) (2019). To be referable to the voters, laws which fall within this definition must be legislative in nature, and not administrative. *Id.* at (b).

Referenda involving the zoning of real property make up a large portion of referenda case law in Utah. *Carter v. Lehi City*, 2012 UT 2, ¶ 70, 269 P.3d 141, 159. In *Mouty v. Sandy City Recorder,* the Utah Supreme Court reaffirmed "[the] determination that administrative zoning matters are not referable to the voters as a matter of constitutional right while legislative zoning matters are referable." 2005 UT 41, ¶ 22, 122 P.3d 521, 528 (citing *Citizen's Awareness Now v. Marakis,* 873 P.2d 1117, 1122 (Utah 1994).

The Utah Supreme Court has designated bright-line rules involving zoning laws that specify circumstances when a zoning law is legislative in nature. *Carter* at ¶¶74-75. The first rule, from *Mouty,* is that "a site-specific zoning decision is legislative (and thus referable) if it is made by a city council that possesses only legislative authority." *Carter* at ¶ 75 (citing *Mouty* at ¶28). The second rule, from *Friends of Maple Mountain, Inc. v.*

*Mapleton City*, 2010 UT 11, 228 P.3d 1238, is that a site-specific zoning decision is legislative if it involves the adoption of a new zoning classification. *Id.*

Based upon this developed case law, the court rules that the decision of the County Council at issue in the present case is a legislative land use law within the meaning of Utah Code Ann. § 20A-7-602.8(2). All parties agree that the County Council was using its legislative authority when it approved the Law at issue. This Law amends the zoning on WPR's piece of land from Forestry and Multiple Use to Resort Special District, in addition to amending the Morgan County General Plan in connection with Morgan County's land use development code

## B. When the Denial of an Application for a Referendum Petition is Appealed, Utah Code § 20-A-7-602.8 Requires the Party Opposing the Application to Prove that the Proposed Referendum is not Referable.

The procedural requirements that direct the court's evaluation in this case begin with the provisions of Utah Code Ann. § 20A-7-602.8. Because the court has determined that the decision of the County Council at issue in this case is a "land use law," within the meaning of Utah Code Ann. 20A-7-602.8(2), by the express language of that section, "a proposed referendum [relating to such law] is legally referrable to voters unless [specific disqualifying circumstances are found.]" *Id.* (emphasis added). The structure of the statutory language creates an initial presumption of referability. This may be rebutted by a showing of one or more disqualifying circumstances, including untimeliness or failure to meet specific structural requirements. Because there is no statutory direction otherwise, the court further rules that the level of proof required to rebut the presumption is a preponderance of the evidence.

11

WPR and the County argue that disqualifying circumstances do exist in this case. Specifically, WPR and the County assert that the Application was not timely filed, and that it does not comply with the requirements of Utah Code Ann. § 20A-7-602(2). The County and WPR also argue that strict compliance with the statutory provisions is required in cases of this nature. However, because the statutory language creates a rebuttable presumption of referability, the burden is on the parties opposing referability to demonstrate the lack of strict compliance. Strict compliance considerations, of themselves, do not rebut the initial presumption of referability, nor do they shift the burden of proof. Each of the asserted grounds for denial in this case is within the described circumstances of disqualification set forth in Utah Code Ann. 20A-7-602.8(2)(d). Each will be addressed separately, including considerations of the appropriate standards and burdens.

The court is not persuaded by Petitioners' arguments that constitutional considerations require Respondents to prove by clear and convincing evidence that the Application did not comply with statutory requirements. The constitutionality of the referendum statute is not being challenged. The question before the court is whether the County properly applied the applicable statutes to the Application when the Application was submitted, not whether the statutes, themselves, are constitutionally deficient, either on their face or as applied

### a. There is Insufficient Evidence to Establish that the Application was Untimely.

In its appellate ruling in this case, the Utah Supreme Court ruled that "a genuine issue of material fact exists regarding the timeliness of the referendum application. We, therefore, decline to affirm on this ground and remand to the district court for findings of

fact on this issue." *Croft v. Morgan City.*, 2021 UT 46, ¶ 50. Throughout these proceedings, WPR asserted that the Application was not timely filed. Notably, the County, in the initial denial decision, did not assert untimeliness as a basis for denial. There is no dispute that a filing deadline did exist in this case.  The court also rules that strict compliance with the deadline was required. However, because of the initial presumption of referability, the parties opposing the Application must establish, by a preponderance of the evidence, that the Application was not timely filed.

Based on the date the County Council passed the Law (October 30, 2019), under Utah Code § 20A-7-601(6), the deadline for filing the Application was 5:00 p.m. on November 6, 2019. At trial, the parties gave conflicting evidence as to whether the application was filed just before 5:00 p.m. or just after 5:00 p.m. on November 6. Specific findings relating to the timing evidence are included in the Factual Findings set forth above.

The court further finds that WPR had a pecuniary interest in and substantial motivation for establishing the untimely filing of the Application.  The dates and times of the recording of the Ordinance and the development agreement that were ultimately prepared after the October 30, 2019, decision of the County Council are noted in further support of the finding of the court that WPR engaged in a deliberate attempt to hinder the timely and complete filing of the Application.  WPR was acutely aware of the timeliness of the Application, and aggressively attempted to create a record that the filing occurred after 5:00 p.m..  These determinations render the WPR timeliness testimony unreliable. As a result, the court gives the testimony by WPR substantially less weight than the testimony of others on the timeliness issue. The most credible

testimony at trial was that the Application was submitted at "about 5 o'clock." There is

no evidence of the precise calibration or accuracy of any particular clock, or the

precision of any particular recollection.

The court rules that Respondents have failed to establish, by a preponderance of

the evidence, that the Application was not timely filed. Therefore, there has not been a

sufficient showing that the Sponsors failed to strictly comply with the timeliness

requirement; the presumption of referability has not been rebutted on the timeliness

question; and the objection that the Application was not timely filed is overruled.

### b. The Application Met Statutory Requirements for Certification of Residency and Statement for Voting History.

At the time the Application was submitted, Utah Code Ann. § 20A-7-602(2)

required "a certification indicating that each of the sponsors is a resident of Utah" and "a

statement indicating that each of the sponsors has voted in an election in Utah in the

last three years."

### i.    Certification of Residency

The Utah Supreme Court ruled that "Utah law has not categorically decided if

and when a signature suffices as a 'certification.'" *Croft v. Morgan Cnty.*, 496 P.3d 83,

94, 2021 UT 46, ¶ 46 (Utah, 2021). The court additionally suggested that whether the

Sponsors' addresses below their printed name fulfilled the "certification" requirement

"may depend on the contents and nature of the application as a whole." *Id.* The Utah

Supreme Court ultimately left that analysis to this court. *See id.*

In response to the Utah Supreme Court's direction, this court analyzed the

document as a whole to determine whether it included the certification required by

statute. On April 20, 2023, this court determined in a decision on a summary judgment

request that there were no material factual disputes on the issue and that the certification and statement requirements of Utah Code Ann. § 20A-7-602(2)(a)-(c) were met by the Application, when its contents were considered as a whole. This court looked at the addresses of the Sponsors included underneath the printed name of each sponsor. In signing the application, each signer agreed to a statement that declares the address listed underneath that signer's name is his or her "residence and post office address" and, that each is a registered voter in the State of Utah. That signature was then notarized. Additionally, as further evidence of residency, registration to vote in the state of Utah requires the individuals to be citizens of the State of Utah. The Application in this case, taken as a whole, complies with the address requirement and the requirement of a statement of residency.

## II.    Statement of Voting History

There is no dispute that the Application included a statement that the Sponsors each voted in a Utah election within the last three years. The Application contained a declaration that each sponsor is "registered to vote in Utah" and had voted in the "last county election." The phrase "last county election" proceeded by a confirmation that each sponsor was registered to vote in Utah and followed by an assurance of residency in Morgan County fulfills the certification requirement. The court confirms and adopts its prior ruling that the statement and certification requirements of Utah Code Ann. § 20A-7-602(2)(a)-(c) have been met, and that the presumption of referability as to this issue has not been rebutted.

### c.  Any Potential Issues with the Notarization of Sponsor Signatures Do Not Render the Signatures on the Petition Invalid.

One of the structural requirements for the Application is that the signature of each sponsor be "acknowledged by a notary public." Utah Code Ann. § 20A-7-602(2)(d) (2019). Even though all signatures on the Application were notarized, the County and WPR now argue that four of the signatures were not properly notarized because they were notarized by Ms. Croft, one of the Sponsors, in violation of the notary statutes. The Utah Supreme Court directed this court to make findings on this issue. *Croft v. Morgan Cnty.*, 2021 UT 46, ¶ 48, 496 P.3d 83, 94.

The referendum statute requires "the signature of each of the sponsors, [be] acknowledged by a notary public." Utah Code Ann. § 20A-7-602(2)(d) (2019).  WPR and Morgan County cite the "Notary Act" provision that, a "notary may not perform a notarial act if the notary: (1) is a signer of the document that is to be notarized . . ."or "is named in the document that is to be notarized." *Id.* § 46-1-7(1)–(2). They argue that Ms. Croft was both a signer and named in the document, which results in her notarizing of the four other signers being invalid. The court is not persuaded by this argument.

Significantly, the notary statute refers to "document[s] that [are] to be notarized," whereas the referendum statute refers to the notarized "acknowledgement of the signature of each sponsor."  The integrity of deeds and other conveyancing documents, for which fraud or self-dealing may be substantial concerns, is significantly enhanced by the notarial act restrictions set forth in the statute. But the court is not persuaded that such restrictions should apply in the present case.

The Notary Act provides that "[i]f a notarial act is performed contrary to or in violation of this chapter, that fact does not of itself invalidate notice to third parties of the

contents of the document notarized." Utah Code Ann. § 46-1-22. The Notary Act
contains no provision which automatically renders void any notarial act performed
contrary to the statute. While the Notary Act describes potential criminal and civil
penalties for a notary's misconduct, it does not impose any restriction on the validity of
the acknowledgment, itself.

Although no Utah case law has been identified regarding policies to be
considered in connection with the notarizing of sponsor signatures on petitions of
various types, such policies have been identified in other jurisdictions. The
Pennsylvania Supreme Court addressed relevant considerations in the case of *In re
Berg,* 973 A.2d 447 (Pa. Commw. Ct.), aff'd 601 PA. 85, 971 A.2d 486 (2009). In *Berg,*
a Pennsylvania judicial candidate notarized the circulator's affidavits which were
attached to signature pages of his nominating petition. The Pennsylvania Supreme
Court ruled that the candidate was a party to the document with a direct interest in his
own candidacy. Therefore, the signatures notarized by the candidate were null and void.
However, in the same decision, the court noted that "a notary does not have a direct
interest in a nomination petition where the notary signed the nomination petition as an
elector." *Id.* at 450.  Additionally, there is "no direct interest by a notary who was a
circulator of a nomination petition and, thus, the notary could notarize a different
circulator's affidavit without violating" the notary statute. *Id.* The court noted that the
"candidate is fundamentally different" than a circulator or even from a notary employed
by the candidate. *Id.*

Other states have also looked to a similar test that looks at "whether honoring the
improperly acknowledged [document] would confer an improper benefit or cause harm."

17

*Torrealba v. Kesmetis*, 124 Nev. 95, 109, 178 P.3d 716, 726 (2008); *see also, In re Williams*, 213 W. Va. at 786, 584 S.E.2d 922 at 928 ("If neither improper benefit [to the notary public] nor any harm [to the parties] flowed from the transaction, then the imperfectly acknowledged [but recorded] deed of trust provides constructive notice under West Virginia law for the purpose of discerning priority in a bankruptcy action.").

This is not a case in which Ms. Croft has any pecuniary or proprietary interest, or in which she is seeking to be elected or appointed to any position. This is a circumstance in which individual registered voters are seeking to have their voices heard, and Ms. Croft's notarial acts apply only to acknowledge the signatures of other Sponsors, not herself.

Here, Ms. Croft would receive no personal benefit from notarizing the signatures of the other Sponsors. The Ordinance in question rezones a single property. Ms. Croft is not the owner of the property nor does she have any financial interest in the property or its development. This referendum would merely permit a legislative act of the County Council to be voted upon in an election. Ms. Croft is comparable to the signature gatherers in Pennsylvania. As a citizen participant with no interest - other than her citizenship - at issue, she promoted a referendum and sought other sponsors. Although she sought to have the Ordinance referred, her participation was not substantial enough to make her an "interested party" in the referendum issue. The Sponsors in this case are all similarly situated citizens.

In analyzing whether any harm occurred, there is no evidence that Ms. Croft's notarization of the signatures of the other Sponsors has created an issue of potential fraud or a problem in the identification of the Sponsors. Indeed, those same Sponsors

have continued to support the Application. Therefore, in light of the above facts, the court rules that the notarization by Ms. Croft of the four other Sponsors' signatures were compliant with the requirements of Utah Code Ann. § 20A-7-602(2)(d) and are not invalid as a result of any claimed violation of Utah's Notary Act. The presumption of referability has not been rebutted on this issue.

### d. The Description of the Law and the Result of the Vote on the Law, as Contained in the Application, Comply with the Requirements of Utah Code Ann. § 20A-7-602(2)(e).

The final structural requirement for the Application is set forth in the alternative, as follows: (i) "if the referendum challenges an ordinance or resolution, [attachment of] one copy of the law; or (ii) if the referendum challenges a local law that is not an ordinance or resolution, [inclusion of] a written description of the local law, including the result of the vote on the local law." Utah Code Ann. § 20A-7-602(2)(e). 'Local laws,' other than ordinances or resolutions, include "a land use law; or other legislative action of a local legislative body." *Id.* at § 20A-7-101(15)(a).

Throughout the presentation of this case, all parties, including the Sponsors, the County, and WPR, have based their presentations and arguments on the fundamental premise that the "Law" at issue in this case is Ordinance No. CO-19-10, passed by the County Council on October 30, 2019. Morgan County and WPR have consistently argued that because a copy of the Ordinance was not attached to the Application, the Application should be denied. Having now heard the evidence in the case, the court determined that the presumed fundamental premise is not supported by the record. Rather, the court has found that no ordinance or resolution was presented or discussed at the Council Meeting. Neither the ultimate Ordinance nor the development agreement

that was essential to establish the substance of the Ordinance, was in existence or publicly available until November 7, 2023, which was the day after the expiration of the deadline for the submission of the Application. Consequently, the claimed required attachment was not available until the day after the deadline for the submission of the Application.

The Ordinance that was ultimately adopted does bear a date of October 30, 2019. However, this date is misleading. Testimony from Stacy Netz Clark ("Ms. Clark"), the County Clerk at the time, confirms the fact that the Ordinance was not signed on October 30th. Ms. Clark testified that until the Ordinance was finalized and given to her to be placed in the vault, a draft would have been in process with the planning and zoning department. However, there is no credible evidence that a copy of any ordinance, in draft form or otherwise, was available to Ms. Clark or to anyone else at any time before it was recorded on Nov. 7, 2019.The Ordinance incorporates and relies for its substance on a development agreement between Wasatch Peaks and Morgan County, with specific language that the Ordinance would not become effective until the development agreement was executed and recorded. Testimony from trial, and the minutes of the October 30 Council Meeting, confirm that at the time the Council Meeting concluded further corrections were needed to the draft development agreement.

Additionally, there is credible evidence that the individual who notarized the signature of the County representative on the final development agreement, was not present at the October 30th Council Meeting. Further, the WPR representative, by his own testimony, confirmed that he signed and delivered the final development agreement to the County Recorder no earlier than the evening of November 6, 2019.

In *Gricius v. Cox*, 2015 UT 86, the Utah Supreme Court ruled that where the applicable referendum statute required a "copy of the law" submitted with the application, but one was not available before the application deadline, "the statute [requiring attachment of a copy of the law] can be construed only as requiring whatever form of the bill the sponsors reasonably can obtain for attachment to a timely application." 2015 UT 86, ¶ 8, 365 P.3d 1198, 1201. The court reasoned, "There is no reasonable interpretation of the term "law" that could mean anything other than a bill passed by the Legislature in whatever form it exists at the time the legislative session ends." *Gricius v. Cox*, 2015 UT 86, ¶ 6, 365 P.3d 1198, 1201. *Gricius* deals with a bill passed by the Utah Legislature, but not yet in effect. Though not yet in effect, the form of the bill as passed did exist and was publicly available at the end of the legislative session. That factual circumstance is very different from the present case, but the policy supporting the decision does have application.

Applying the analysis of *Gricius v. Cox* to the present case, the obligation to attach a copy of the ordinance or resolution to the Sponsor's Application would apply only if a copy of the ordinance or resolution were available as of the end of the legislative session in which the law was adopted. The "legislative session" that triggered the start of the submission period for the Application in this case was the Council Meeting on Oct. 30, 2019. Because no copy of any ordinance or resolution existed as of the close of the Council Meeting, the requirement of attaching a copy of the Ordinance to the Application did not apply.

Fortunately, Utah Code Ann. § 20A-7-602(2)(e)(ii) includes an alternative means of identifying the local law that is the intended subject of the referendum petition when

there is neither an ordinance nor a resolution. That alternative is to provide "a written description of the local law, including the result of the vote on the local law. *Id.*

Because no ordinance or resolution existed for attachment to the Application in this case, it was reasonable, appropriate, and consistent with the requirements of Utah Code Ann. § 20A-7-602(2)(e)(ii) for the Sponsors to attach a copy of the notice of the meeting that included a summary of the law which was considered and passed. The Sponsors also included the outcome of the vote which occurred at the Council Meeting. The law which the Sponsors desired to refer was appropriately identified in this manner. Therefore, the requirement for a description of the "Law" that was the subject of the Application was satisfied, and the presumption of referability has not been rebutted on this issue.

## CONCLUSION AND ORDER

Based upon the foregoing analysis, the court hereby

ORDERS AND DECREES as follows:

1. The statutory requirements for the Application for a referendum petition in this case have been satisfied.

2. The presumption of referability of the referendum petition requested in this case has not been rebutted, based on a preponderance of the evidence.

3. All objections of Morgan County and WPR to the Application are overruled.

4.  The decision of Morgan County to deny the Application is reversed.

5.  The local law passed on October 30, 2019, by the Morgan County Council, concerning the rezoning of WPR's property, including the Ordinance and development agreement that were ultimately promulgated based on that law, are referable to the voters of Morgan County, subject to applicable statutory provisions for the processing of the referendum petition.

6.  This order constitutes the final order of the court in this matter, and no further documentation of the order is necessary.

Dated this ___15th___ day of September, 2023.

Hon. Noel S. Hyde
District Court Judge

23

## CERTIFICATE OF MAILING

On this 15th day of September 2023 I hereby certify that I emailed a true and correct copy of the foregoing Memorandum Decision and Order to the following parties:

Garrett Smith
Attorney for Morgan County
GSMITH@MORGANCOUNTYUTAH.GOV

Mark Gaylord
Stanley Tesia
William Lasker
Attorney for Wasatch Peaks
GAYLORD@BALLARDSPAHR.COM
STANLEYT@BALLARDSPAHR.COM
LASKERW@BALLARDSPAHR.COM

Darin Hammond
Attorney for Petitioners
DHAMMOND@SMITHKNOWLES.COM

Dana T. Farmer
DANATFARMER@ICLOUD.COM
Attorneys for Petitioners

Kristie Miller
Judicial Assistant